| | |
|---|---|
| **WO** | SC |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| David Torrez, | ) | No. CV 09-0957-PHX-MHM (MHB) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Corrections Corp. of America, et al., | ) | |
| Defendants. | ) | |

Plaintiff David Torrez, a California inmate who is confined in the La Palma Correctional Center, a Corrections Corporation of America (CCA) facility in Eloy, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, which the Court dismissed with leave to amend. (Doc.# 1, 4.)[1] Plaintiff has filed a First Amended Complaint. (Doc.# 8.) Plaintiff has also filed a motion for service of the First Amended Complaint by the U.S. Marshal. (Doc.# 9.) The Court will dismiss the First Amended Complaint with leave to amend and deny the motion for service.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

---

[1] "Doc.#" refers to the docket number of filings in this case.

**JDDL-K**

be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

If the Court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the action. See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*). The Court should not, however, advise the litigant how to cure the defects. This type of advice "would undermine district judges' role as impartial decisionmakers." Pliler v. Ford, 542 U.S. 225, 231 (2004); see also Lopez, 203 F.3d at 1131 n.13 (declining to decide whether the court was required to inform a litigant of deficiencies). Plaintiff's First Amended Complaint will be dismissed for failure to state a claim, with leave to amend because the First Amended Complaint may possibly be saved by amendment.

**II.    First Amended Complaint**

Plaintiff alleges three counts for violation of privacy, threats to safety, and

constitutionally deficient medical care. He sues CCA and the following La Palma Correctional Center (LPCC) employees: Health Service Administrator Burnett; Unit Manager Meier; Security Lieutenant Johnson; an Unknown Male Staff member; and an Unknown Medical Staff, who is a nurse practitioner. He seeks injunctive, compensatory, and punitive relief.

Plaintiff's claims are based on the following allegations: Plaintiff was tested for tuberculosis by the California Department of Corrections and Rehabilitation (CDCR) in April 2008. In July 2008, Plaintiff was transferred to the Florence Correctional Center, a CCA facility in Florence, Arizona. On Saturday, September 6, 2008, Plaintiff began to experience severe lower abdominal pain and to urinate blood. Plaintiff was examined by medical staff who concluded that his condition was not an emergency. Plaintiff was returned to his cell and told to submit a health needs request so that he could be scheduled to be seen during the week. On Monday, September 8, Plaintiff was examined by a doctor who diagnosed Plaintiff with a bladder infection. The physician told Plaintiff that the infection and pain should subside within a few days, but to contact him if it did not. Plaintiff alleges that CCA has a policy of delaying in providing medical care in non-emergency situations until regular clinic hours. He contends that the delay in seeing a doctor pursuant to that policy caused him to suffer unnecessary pain.

On September 13, 2008, Plaintiff was transferred to LPCC. On arrival at LPCC, Plaintiff and about 30 other inmates were taken to the medical department, where clinic staff gave them an Intake Teaching Packet (ITP) and which they were to acknowledge reading with their signature. A few seconds after receiving the ITP, Defendants Meier, Johnson, and the Unknown Male Staff entered the clinic and took a "security stance" at the door: legs apart and arms crossed. Meier announced that any inmate who refused a tuberculosis test would be strapped down and forced to be tested because that was the "CCA way." (Doc.# 8 at 3A.) Meier also said that it was CCA policy to test an inmate for tuberculosis every time an inmate was relocated to a new facility. (Id.) Several inmates objected on the basis that they had already recently been tested by CDCR or that they took medications that caused a false

1 positive, both of which would be in their medical files. The discussion between inmates and
2 staff became more acrimonious. One inmate asserted that the ITP provided that they had the
3 right to refuse medical treatment, which he construed to include tuberculosis testing. Meier
4 told the inmates that anyone who refused the test would be strapped down, tested, and then
5 sent to the "hole." (Id. at 3B.) Johnson told the inmates that the test posed no risk to the
6 inmates and that there would be no exceptions to the test. The Unknown Male Staff added
7 that additional security would be called if necessary to complete testing but that the inmates
8 would regret it if additional security was called. At this juncture, the inmates were angry and
9 Plaintiff feared they would riot and that he would be unable to protect himself, apparently
10 due to his bladder infection. Meier reiterated that everyone had to be tested and threatened
11 to call in the Special Operation Response Team (SORT), if necessary. Meier and the other
12 officers retreated into the clinic and an inmate kicked a chair towards the door.

13 A few minutes later, an officer came out of the clinic and told Plaintiff that he was to
14 go first. Plaintiff objected on the grounds that he had been unable to read the ITP because
15 he did not have his eyeglasses. The officer required Plaintiff to go in. After taking his
16 temperature and blood pressure, Plaintiff submitted to the PPD test over his express
17 objections, while Meier and Johnson observed.

## III.  Failure to State a Claim

19 To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the
20 conduct about which he complains was committed by a person acting under the color of state
21 law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v.
22 Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, to state a valid constitutional
23 claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of
24 a particular defendant and he must allege an affirmative link between the injury and the
25 conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). Further,
26 negligence by a defendant acting under color of state law is not sufficient to state a claim
27 under § 1983. Daniels v. Williams, 474 U.S. 327, 330-31 (1986) (plaintiff must plead more
28 than mere negligence in a § 1983 action); see Alfrey v. United States, 276 F.3d 557, 568 (9th

Cir. 2002).

**A.    Privacy**

In Count I, Plaintiff alleges that CCA maintained a policy subjecting inmates to tuberculosis testing whenever they are transferred to a new facility and that Plaintiff was subjected to such testing, when unnecessary, over his objections. As a result, Plaintiff suffered a needle prick and contends that he suffered from emotional distress and body aches. Plaintiff alleges that Meier and Johnson remained present over Plaintiff's objection as Plaintiff disclosed confidential medical information with medical staff, which he contends violated his privacy rights. Plaintiff alleges that Unknown Medical Staff administered the tuberculosis test without Plaintiff's consent and despite his express objections that the test violated CCA, CDCR, and ITP policies. Plaintiff alleges that the administration of the test caused him pain when the needle was inserted and stress causing neck and back pain and insomnia.

"The applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy" that has been "invaded by government action." Hudson v. Palmer, 468 U.S. 517, 525 (1984) (quotation omitted); see also Bell v. Wolfish, 441 U.S. 520, 557 (1979). "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson, 468 U.S. at 527-28. Furthermore, any restriction on an inmate's privacy interests is justified to the extent that it is "reasonably related to legitimate penological interests." See Turner v. Safley, 482 U.S. 78, 89 (1987). Nevertheless, inmates have a "right to bodily privacy." Sepulveda v. Ramirez, 967 F.2d 1413, 1415 (9th Cir. 1992); see Hydrick v. Hunter, 500 F.3d 978, 1000 (9th Cir. 2007). The state, however, may restrict this right "to the extent necessary to further the correctional system's legitimate goals and policies." Grummett v. Rushen, 779 F.2d 491, 493 (9th Cir. 1985). Preventing disease and protecting the health of inmates are legitimate penological goals. See, e.g., Thompson v. City of Los Angeles, 885 F.2d 1439, 1447 (9th Cir.1989). Further, tuberculosis is

recognized as a highly contagious disease in prison populations. Lee v. Armontrout, 991 F.2d 487, 489 (8th Cir. 1993). The plaintiff "'bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.'" Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (citations omitted).

Plaintiff fails to allege any facts to support that CCA maintained a policy that resulted in a violation of Plaintiff's privacy rights. Indeed, he states that Meier and Johnson remained present during his interview by medical staff in contravention of CCA policy and contracts with the CDCR. Plaintiff also fails to state a claim against Meier or Johnson based on their presence while he discussed medical information prior to administration of the tuberculosis test. Plaintiff fails to allege facts to support that Meier and Johnson were present for any reasons that were not reasonably related to legitimate penological interests: to ensure that Plaintiff complied with testing. Plaintiff otherwise fails to allege facts to support that he had an expectation of privacy in the administration of a tuberculosis test. Plaintiff also fails to allege facts to support that the Unknown Medical Staff who administered the tuberculosis test in any way violated Plaintiff's reasonable expectations of privacy in connection with the tuberculosis test. For these reasons, Plaintiff fails to state a claim for violation of his privacy rights in Count I.

**B.     Threats to Safety**

In Count II, Plaintiff alleges a violation of the Eighth Amendment against Defendants Meier, Johnson, and Unknown Male Staff because they exposed Plaintiff to "substantial risk of harm with indifference to the risk by instigating a riot using unwarranted combative language" towards the inmates in the clinic waiting room. Plaintiff contends that when the inmates became agitated by the statements of Defendants Meier, Johnson, and Unknown Male Staff, Defendants threatened to call the Special Operation Response Team to control the inmates with pepper spray and physical restraint.

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, and officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hearns v.

Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The inmate must show that the deprivation is "objectively, sufficiently serious," and that the prison officials had a "sufficiently culpable state of mind," acting with deliberate indifference. Hearns, 413 F.3d at 1040 (quoting Farmer, 511 U.S. at 834). To demonstrate deliberate indifference, a prisoner must show that the official knew of and disregarded an excessive risk to inmate safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. Farmer, 511 U.S. at 837.

Plaintiff fails to allege facts to support that Defendants Meier, Johnson, or Unknown Male Staff knew of, but disregarded, a substantial threat to Plaintiff's safety. To the contrary, Plaintiff alleges that, when Defendants saw that the inmates were becoming agitated, Defendants took steps to control the inmates by informing them that they would call the SORT to control the inmates with pepper spray and physical restraints. No riot occurred. Finally, "[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation[.]'" Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (quoting Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)). For these reasons, Plaintiff fails to state a claim for a threat to his safety in Count II.

### D. Medical Care

In Count III, Plaintiff alleges unconstitutionally inadequate medical care against CCA, Burnett, and Unknown Medical Staff. Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must allege facts to support that a defendant acted with "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,

1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Farmer, 511 U.S. at 837. Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. Farmer, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." Clement v. California Dep't of Corrections, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105-06.

Plaintiff alleges that CCA denied him constitutionally adequate medical treatment pursuant to its policy to delay non-emergency medical care until regular weekday appointments. He alleges that he suffered unnecessary pain due to the delay between Saturday, September 6, 2008, and Monday, September 8. Plaintiff acknowledges that he was evaluated by medical staff the day he began to suffer symptoms and that he was thereafter seen the following Monday. Plaintiff further states that the examining physician told Plaintiff that his bladder infection and pain should subside after a few days. Plaintiff does not allege that any treatment was provided by the physician or that the brief delay in anyway prolonged his pain. Plaintiff thus fails to allege an actual injury resulting from the delay in

being examined by a physician under CCA's policy and therefore fails to state a claim against it.

Plaintiff sues Burnett based on his supervisory role over the LPCC medical department. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). Further, there is no *respondeat superior* liability under § 1983, so a defendant's position as the supervisor of a someone who allegedly violated a plaintiff's constitutional rights does not make him liable. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his individual capacity, "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045. Plaintiff fails to assert any basis for liability against Burnett other than *respondeat superior*. Plaintiff has not alleged that Burnett enacted or enforced a policy, custom, or practice that resulted in the denial of Plaintiff's constitutional rights. Further, Plaintiff has not alleged that Burnett directly violated his constitutional rights or that he was aware that Plaintiff's rights were being violated but failed to act. Thus, Plaintiff fails to state a claim against Burnett in Count III.

Plaintiff contends that Defendant Unknown Medical Staff forced him to submit to the tuberculosis test without his consent by ordering Plaintiff to extend his arm after Plaintiff objected to the test. Plaintiff has failed to allege facts to support that he was subjected to a wanton infliction of pain or that Defendant Unknown Medical Staff knew of and disregarded an excessive risk to Plaintiff's health.

For the reasons discussed, Plaintiff fails to state a claim for denial of constitutionally adequate medical care. Count III will be dismissed.

**IV.    Leave to Amend**

For the foregoing reasons, Plaintiff's First Amended Complaint will be dismissed for failure to state a claim upon which relief may be granted. Within 30 days, Plaintiff may

1 submit a second amended complaint to cure the deficiencies outlined above. The Clerk of
2 Court will mail Plaintiff a court-approved form to use for filing a second amended complaint.
3 If Plaintiff fails to use the court-approved form, the Court may strike the second amended
4 complaint and dismiss this action without further notice to Plaintiff.

5 A second amended complaint supersedes the original Complaint and First Amended
6 Complaint. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992); Hal Roach Studios v.
7 Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will
8 treat the original Complaint and First Amended Complaint as nonexistent. Ferdik, 963 F.2d
9 at 1262. Any cause of action that was raised in the original Complaint or First Amended
10 Complaint is waived if it is not raised in a second amended complaint. King v. Atiyeh, 814
11 F.2d 565, 567 (9th Cir. 1987).

**V.     Motion to Order Service of the First Amended Complaint by U.S. Marshal**

Plaintiff has filed a motion to order service by the U.S. Marshal. (Doc.# 9.) As discussed above, Plaintiff fails to state a claim against any Defendant in his First Amended Complaint. Therefore, service is premature and Plaintiff's motion will be denied. When and if Plaintiff files a second amended complaint that states a claim, the Court will order service.

**VI.    Warnings**

**A.     Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

**B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

/    /    /

**C. Copies**

Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D. Possible "Strike"**

Because the First Amended Complaint has been dismissed for failure to state a claim, if Plaintiff fails to file a second amended complaint correcting the deficiencies identified in this Order, the dismissal will count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

**E. Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's motion to order service by the U.S. Marshal is **denied**. (Doc.# 9.)

(2) Plaintiff's First Amended Complaint (doc.# 8) is **dismissed** for failure to state a claim. Plaintiff has **30 days** from the date this Order is filed to file a second amended complaint in compliance with this Order.

(3) If Plaintiff fails to file a second amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal counts as a "strike" under 28 U.S.C. § 1915(g).

///

(4) The Clerk of Court must mail Plaintiff a court-approved form for filing a civil rights complaint by a prisoner.

DATED this 2nd day of October, 2009.

Mary H. Murguia
United States District Judge