IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| David Torrez, | ) No. CV 09-0957-PHX-MHM (MHB) |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Corrections Corp. of America, et al., | ) |
| Defendants. | ) |

Plaintiff David Torrez, a California inmate who is confined in the La Palma Correctional Center, a Corrections Corporation of America (CCA) facility in Eloy, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, which the Court dismissed with leave to amend. (Doc.# 1, 4.)[1] Plaintiff filed a First Amended Complaint, which the Court dismissed for failure to state a claim with leave to amend. (Doc.# 8, 10.) Plaintiff has filed a Second Amended Complaint. (Doc.# 11.) Because Plaintiff has failed to cure previously cited deficiencies and otherwise fails to state a claim, the Second Amended Complaint and this action will be dismissed.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

---

[1] "Doc.#" refers to the docket number of filings in this case.

be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

If the Court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the action. See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*). Leave to amend, however, need not be given if a complaint as amended is subject to dismissal. Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny or grant leave to amend is particularly broad where a plaintiff has previously been permitted to amend his complaint. See Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996). Failure to cure deficiencies by previous amendments is one of the factors to be considered in deciding whether justice requires granting leave to amend. Moore, 885 F.2d at 538. Plaintiff's Second Amended Complaint fails to cure cited deficiencies and otherwise fails to state a claim.

## II.     Second Amended Complaint

Plaintiff alleges one count for violation of privacy.  He sues CCA and the following La Palma Correctional Center (LPCC) employees: Unit Manager Meier; Security Lieutenant Johnson; an Unknown Male Staff member; and an Unknown Nurse Practitioner.[2]  He seeks injunctive, compensatory, and punitive relief.

Plaintiff's claims are based on the following allegations: Plaintiff was tested for tuberculosis by the California Department of Corrections and Rehabilitation (CDCR) in April 2008.  In July 2008, Plaintiff was transferred to the Florence Correctional Center, a CCA facility, in Florence, Arizona.

On September 13, 2008, Plaintiff was transferred to LPCC. On arrival at LPCC, Plaintiff and about 30 other inmates were taken to the medical department, where clinic staff gave them an Intake Teaching Packet (ITP), which they were to read and acknowledge with their signature.  A few seconds after receiving the ITP, Defendants Meier, Johnson, and the Unknown Male Staff-member entered the clinic and took a "security stance" at the door: legs apart and arms crossed.  Meier announced that any inmate who refused a tuberculosis test would be strapped down and forced to be tested because that was the "CCA way." (Doc.# 8 at 3A.)  She also said that it was CCA policy to test an inmate for tuberculosis every time an inmate was relocated to a new facility.  (Id.)  Several inmates objected on the basis that they had already recently been tested by CDCR or that they took medications that caused a false positive, which were reflected in their medical files.  The discussion between inmates and staff became more acrimonious.  One inmate asserted that the ITP provided that they had the right to refuse medical treatment, which he construed to include tuberculosis testing. Meier told the inmates that anyone who refused the test would be strapped down, tested, and then sent to the "hole." (Id. at 3B.)  Johnson told the inmates that the test posed no risk to the inmates and that there would be no exceptions to the test.  The Unknown Male Staff-member added that additional security would be called if necessary to complete testing but

---

[2] Plaintiff does not allege any claim against the male staff-member. (Doc.# 11 at 3C-3D.)

- 3 -

that the inmates would regret it if additional security was called. At this juncture, the inmates were angry and Plaintiff feared they would riot and that he would be unable to protect himself due to a bladder infection. Meier reiterated that everyone had to be tested and threatened to call in the Special Operation Response Team (SORT), if necessary. Meier and the other officers retreated into the clinic and an inmate kicked a chair towards the door.

A few minutes later, an officer came out of the clinic and told Plaintiff that he was to go first. Plaintiff objected on the grounds that he had been unable to read the ITP because he did not have his eyeglasses. The officer required Plaintiff to go in. After taking his temperature and blood pressure, Plaintiff submitted to the PPD test despite his objections, while Meier and Johnson observed.

### III.     Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, to state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

As in his previous complaints, Plaintiff again alleges that his Fourth Amendment privacy rights were violated. The Court previously stated:

> Plaintiff alleges that CCA maintained a policy subjecting inmates to tuberculosis testing whenever they are transferred to a new facility and that Plaintiff was subjected to such testing, when unnecessary, over his objections. As a result, Plaintiff suffered a needle prick and contends that he suffered from emotional distress and body aches.
> Plaintiff alleges that Meier and Johnson remained present over Plaintiff's objection as Plaintiff disclosed confidential medical information with medical staff, which he contends violated his privacy rights. Plaintiff alleges that Unknown Medical Staff administered the tuberculosis test without Plaintiff's consent and despite his express objections that the test violated CCA, CDCR, and ITP policies. Plaintiff alleges that the administration of the test caused him pain when the needle was inserted and stress causing neck and back pain and insomnia.
> "The applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a "justifiable," a "reasonable," or a

> "legitimate expectation of privacy" that has been "invaded by government action." Hudson v. Palmer, 468 U.S. 517, 525 (1984) (quotation omitted); see also Bell v. Wolfish, 441 U.S. 520, 557 (1979). "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson, 468 U.S. at 527-28. Furthermore, any restriction on an inmate's privacy interests is justified to the extent that it is "reasonably related to legitimate penological interests." See Turner v. Safley, 482 U.S. 78, 89 (1987). Nevertheless, inmates have a "right to bodily privacy." Sepulveda v. Ramirez, 967 F.2d 1413, 1415 (9th Cir. 1992); see Hydrick v. Hunter, 500 F.3d 978, 1000 (9th Cir. 2007). The state, however, may restrict this right "to the extent necessary to further the correctional system's legitimate goals and policies." Grummett v. Rushen, 779 F.2d 491, 493 (9th Cir. 1985). Preventing disease and protecting the health of inmates are legitimate penological goals. See, e.g., Thompson v. City of Los Angeles, 885 F.2d 1439, 1447 (9th Cir.1989). Further, tuberculosis is recognized as a highly contagious disease in prison populations. Lee v. Armontrout, 991 F.2d 487, 489 (8th Cir. 1993). The plaintiff "'bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.'" Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (citations omitted).
>
> Plaintiff fails to allege any facts to support that CCA maintained a policy that resulted in a violation of Plaintiff's privacy rights. Indeed, he states that Meier and Johnson remained present during his interview by medical staff in contravention of CCA policy and contracts with the CDCR. Plaintiff also fails to state a claim against Meier or Johnson based on their presence while he discussed medical information prior to administration of the tuberculosis test. Plaintiff fails to allege facts to support that Meier and Johnson were present for any reasons that were not reasonably related to legitimate penological interests: to ensure that Plaintiff complied with testing. Plaintiff otherwise fails to allege facts to support that he had an expectation of privacy in the administration of a tuberculosis test. Plaintiff also fails to allege facts to support that the Unknown Medical Staff who administered the tuberculosis test in any way violated Plaintiff's reasonable expectations of privacy in connection with the tuberculosis test. For these reasons, Plaintiff fails to state a claim for violation of his privacy rights in Count I.

(Doc.# 10 at 5-6.)

In the Second Amended Complaint, Plaintiff alleges that CCA implemented a policy that required "unwarranted medical testing," which contradicted the terms of CCA's contract with the California Department of Corrections and Rehabilitation. He contends that as a result, he was given a tuberculosis skin test over his objections after he was transferred to LPCC and under duress. Plaintiff alleges that Meier and Johnson "intruded" into the clinic area and he was "forced to reveal private medical information" in their presence. (Doc.# 11 at 3C.) He alleges that the unknown male medical staff-member administered the tuberculosis test despite Plaintiff's objection. Plaintiff asserts that administration of the skin

1 test violated "state law."[3] As in his previous complaints, Plaintiff fails to set forth facts to
2 support that he had a reasonable expectation of privacy under the circumstances or that any
3 Defendant violated his Fourth Amendment rights. Accordingly, Plaintiff fails to state a
4 claim.

**Conclusion**

Plaintiff was previously warned about the deficiencies in his complaints and was afforded opportunities to cure those shortcomings. (Doc.# 6, 10.) Plaintiff has not cured the cited deficiencies in his Second Amended Complaint or otherwise stated a claim for relief. Accordingly, the Second Amended Complaint and this action will be dismissed.

**IT IS ORDERED:**

(1) The Second Amended Complaint (doc.# 11) is **dismissed** for failure to state a claim.

(2) The Clerk of Court must enter a judgment of dismissal of this action with prejudice that states that the dismissal counts as a "strike" under 28 U.S.C. § 1915(g).

DATED this 16th day of December, 2009.

_____
Mary H. Murguia
United States District Judge

---

[3] Plaintiff does not indicate whether he is referring to Arizona, California, or other state law. Plaintiff expressly filed this case under 42 U.S.C. § 1983, i.e., based on federal question subject matter jurisdiction.

- 6 -